United States District Court
Southern District of Texas
**ENTERED**
March 31, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ROSIE STASEK (HANSEN), | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-CV-03833 |
| | § | |
| STATE FARM LLOYDS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This insurance-coverage dispute arises from alleged hail damage to Rosie Stasek's roof. After a storm in June 2021, State Farm estimated that covered repairs would cost $1,217.53 — well below Stasek's deductible. Stasek contends that the hail damage requires a complete roof replacement at a cost exceeding $34,000 and that State Farm breached her policy by denying full coverage. Beyond this contract dispute, Stasek alleges that State Farm's handling of her claim violated its common-law duty of good faith and fair dealing, Chapters 541 and 542 of the Texas Insurance Code, and the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"). State Farm moves for summary judgment on all claims, arguing that Stasek has provided no evidence that her losses were caused by hail and cannot show that State Farm acted unreasonably in handling her claim.

Before the Court is State Farm Lloyd's Motion for Summary Judgment. (Dkt. No. 24). For the reasons below, the Court **GRANTS in part** and **DENIES in part** the Motion. (*Id.*). Genuine issues of material fact exist on Stasek's breach-of-contract and Chapter 542 claims, but State Farm is entitled to summary judgment on the remaining claims.

## I.     BACKGROUND[1]

Rosie Stasek owns a home in Spring, Texas, covered by a State Farm homeowner's policy.  (Dkt. No. 24-2 at 2); (Dkt. No. 25-3 at 4).  On September 22, 2021, she submitted a claim for hail damage to her roof.  (Dkt. No. 24-2 at 2).  The date of loss was initially determined to be June 3, 2021.  (*Id.* at 17).[2]  State Farm inspected the property on October 4, 2021, and found hail damage to one rain cap and water damage in the laundry room.  (*Id.* at 3).  State Farm estimated that repairs would cost $1,217.53—well below Stasek's $5,256 deductible.  (*Id.*).

Both State Farm and Stasek retained engineers and adjusters who inspected the property.  For example, Stasek retained an adjuster who inspected the property on May 4, 2022, and prepared a detailed damage estimate.  (*See* Dkt. No. 25-5).  The estimate calculated a total replacement-cost value of $34,692.28 for the claimed storm damage.  (*Id.* at 7).  The adjuster documented his inspection with 188 photographs of the property and alleged damage.  (*Id.* at 9–102).

One year later—on May 15, 2023—State Farm's engineer, James Crawford, inspected the property.  (Dkt. No. 24-3 at 9).  Crawford concluded that Stasek's damage resulted from normal wear and tear rather than hail, save for some minor hail damage to

---

[1]     Except where noted, this Section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant.  *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020).  The Court has not weighed evidence or made credibility findings.  *Id.*

[2]     State Farm claims that Stasek reported June 3, 2021, as the date of loss.  (Dkt. No. 24 at 6).  Stasek contends that "State Farm assigned a date of loss of June 3, 2021, to Plaintiff's claim."  (Dkt. No. 25 at 5).  Stasek's expert determined that the actual date of loss was June 5, 2021.  (Dkt. No. 25-7 at 6).  Though the record is unclear, State Farm cites no authority suggesting that this discrepancy affects the summary judgment analysis.

Stasek's metal roof vents. (*Id.* at 9–12). He found that the available weather data showed no hail large enough to damage the roof during the relevant time period. (*Id.* at 13). According to Crawford, the largest hail that may have fallen at the property over the past ten years was only 0.8 inches in diameter. (*Id.*). Crawford claims that shingle damage is expected only when hail reaches a diameter of 1.5 inches. (*Id.* at 18).

Stasek also retained an engineer, Neil Hall, (*see* Dkt. No. 25-7), who conducted the final inspection one month later, on June 6, 2023, (Dkt. No. 25-1 at 2). Hall also analyzed weather data and determined that no significant storm occurred on June 3, 2021. (Dkt. No. 25-7 at 6). Instead, radar data showed that 0.75–1.25-inch hail struck the area on June 5, 2021. (*Id.* at 5, 48). Based on his inspection and the weather data, Hall concluded that the June 5 storm caused widespread hail damage, requiring a complete roof replacement. (*Id.* at 6).

Stasek sued State Farm for breach of contract and for violating its common-law duty of good faith and fair dealing, Chapters 541 and 542 of the Texas Insurance Code, and the DTPA. (Dkt. No. 1 at 7–10). State Farm now moves for summary judgment, arguing that (1) Stasek cannot raise a genuine fact issue on whether covered perils—rather than excluded wear and tear—caused her losses and (2) her extracontractual claims fail as a matter of law. (Dkt. No. 24).

## II.    LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under governing law. *Renwick*

3

*v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).  And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).  The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)).  "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'"  *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting

4

*Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)), *as revised* (July 14, 2017). If evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## III.    DISCUSSION

The Court first examines Stasek's breach-of-contract claim, where dueling expert opinions about hail damage create factual disputes for a jury to resolve. The Court then addresses Stasek's extracontractual claims, which fall into distinct categories requiring separate treatment. Some claims—like the common-law duty of good faith and certain Texas Insurance Code violations—share a critical requirement: Stasek must show that State Farm lacked any reasonable basis for denying her claim. Other statutory claims proceed on independent theories about State Farm's handling of Stasek's claim and its communications to her. Finally, Stasek's DTPA claims incorporate elements of both categories, requiring analysis that tracks the underlying Insurance Code violations. As explained below, some claims present triable issues, but others fail as a matter of law based on the summary-judgment record.

### A.    BREACH OF CONTRACT

The Parties agree that Stasek's breach-of-contract claim turns on causation—i.e., whether hail damaged Stasek's roof beyond what State Farm originally estimated.  (*See* Dkt. No. 24 at 11–13); (Dkt. No. 25 at 10–14).  But the Parties' experts draw different conclusions from the same data.  For example, both experts examined spots on Stasek's roof where the granule coating on the shingles is mostly gone, as shown below:



(Dkt. No. 25-7 at 17) (Hall's expert report).  Stasek's expert, Neil Hall, says that these are hail strikes.  (*See id.* at 8–26).  State Farm's expert, James Crawford, says that this is "long-term granule loss to the shingles inconsistent with hail."  (*See* Dkt. No. 24-3 at 44–53).

Elsewhere, Hall and Crawford examine what looks like the same tear in one of Stasek's window screens:



(*Id.* at 28) (Crawford's report); (Dkt. No. 25-7 at 11) (Hall's report).  Hall labels this a "[h]ail damaged window screen."  (Dkt. No. 25-7 at 11).  Crawford concludes that the "screen displays a large mechanical scrape."  (Dkt. No. 24-3 at 28).

The reports continue in this fashion—Hall attributing the damage he sees to hail; Crawford, to "mechanical impacts" (not hail) and ordinary wear and tear.  *Compare generally* (Dkt. No. 25-7) (Hall's report) *with* (Dkt. No. 24-3) (Crawford's report).  Ultimately, Hall documented multiple hail strikes in each of four 100-square-foot test areas, finding seven strikes in one section, nine in another, and three each in two other sections.  (Dkt. No. 25-7 at 3–4).  He also found hail damage to gutters and downspouts.

(*Id.* at 3).   State Farm's adjuster (not Crawford) also found some hail damage, documenting damage to a rain cap that required repair.  (Dkt. No. 24-2 at 3).

Crawford, by contrast, found only normal deterioration across the roof's surface. (Dkt. No. 24-3 at 20).  His inspection revealed long-term granule loss that he considered inconsistent with hail strikes, particularly given the pattern of deterioration on south-facing surfaces.  (*Id.*).  Crawford also noted that portions of the ridge shingles were deteriorating and splitting along creases, causing them to loosen and slip downslope. (*Id.*).  The only hail-related damage Crawford confirmed was 0.375-inch hail dents in the roof's soft-metal vents.  (*Id.* at 12).  Crawford found no hail impacts to the roof shingles that would justify replacement.  (*Id.* at 20).

Hall and Crawford also draw conflicting conclusions from the weather data.  Hall analyzed radar data that he says shows 0.75–1.25-inch hail striking the area on June 5, 2021.  (Dkt. No. 25-7 at 5, 48).  Crawford maintains, however, that the largest hail that could have fallen at the property over the past decade was only 0.8 inches in diameter. (Dkt. No. 24-3 at 17).  Crawford opines that laminated shingles like those on Stasek's roof only sustain damage from hail exceeding 1.5 inches in diameter.  (*Id.* at 17–18).  Hall disagrees, finding the June 5 hailstorm substantial enough to cause the documented damage.  (Dkt. No. 25-7 at 6).

This conflicting evidence creates genuine issues for trial.  A reasonable juror might credit Hall's analysis of both the physical damage and weather data.  Or a juror might find Crawford's wear-and-tear explanation more persuasive.  When reasonable jurors

could differ on material facts, summary judgment is inappropriate. *See Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2511.

"This is a classic 'battle of the experts,' the winner of which must be decided by a jury." *Cox v. Provident Life & Accident Ins.*, 878 F.3d 504, 507 (5th Cir. 2017). State Farm's request for summary judgment on the breach-of-contract claim is, in truth, a request for the Court to credit State Farm's evidence and expert testimony over Stasek's. (*See* Dkt. No. 24 at 11–13). But the Court "may not make credibility determinations or weigh the evidence" at this stage. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). For that reason, the Court denies State Farm's request for summary judgment on Stasek's breach-of-contract claim.

## B.    Extracontractual Claims

Next, Stasek's extracontractual claims. They fall into four categories. First, her good-faith-and-fair-dealing claim alleging that State Farm denied coverage in bad faith— that is, without any reasonable basis. Second, her Chapter 541 Insurance Code claims, which include both bad-faith claims and independent claims about State Farm's conduct. Third, her Chapter 542 Prompt Payment Act claims, which survive because there is a fact issue on coverage. Fourth, her DTPA claims, which incorporate elements of her Insurance Code claims and require similar analysis. The Court addresses each in turn.

### 1.    Breach of the duty of good faith and fair dealing

First, Stasek's claim that State Farm breached its duty of good faith and fair dealing. Under Texas Law, an insurer has a common-law duty of good faith and fair dealing. *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). Courts

assess claims alleging a breach of this duty under the reasonable-basis test. *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997). Under this test, a breach can be found only if there was "*no reasonable basis* for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial." *Id.* (emphasis in original). "In determining whether a reasonable basis existed for denying a claim, the facts available to the insurer at the time of denial are considered." *Douglas v. State Farm Lloyds*, 37 F.Supp.2d 532, 536 (S.D. Tex. 1999) (citing *Viles v. Sec. Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990)).

The insured must establish both (1) the absence of a reasonable basis for denying or delaying payment and (2) that the insurer knew or should have known of that absence. *Id.* This requires showing "that there were no facts before the insurer which, if believed, would justify denial of the claim." *Id.* at 542 (quoting *Higginbotham*, 103 F.3d at 459). "As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous," the insurer is not liable for breach of the duty of good faith and fair dealing. *Id.* at 536 (quoting *Higginbotham*, 103 F.3d at 459). "Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998). And "[a] simple disagreement among experts about whether the cause of the loss is one covered by the policy will not support a judgment for bad faith." *Tex. Friends Chabad-Lubavitch, Inc. v. Nova Cas. Co.*, 539 F.Supp.3d 669, 682 (S.D. Tex. 2021) (quoting *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex. 1994)).

State Farm provides evidence of a reasonable basis for denying coverage.  State Farm inspected the property on October 4, 2021, with Stasek present—less than two weeks after Stasek submitted her claim.  (Dkt. No. 24-2 at 2–3).  State Farm's adjuster found "no hail-related damage on the roof surface, with the exception of damage to one rain cap."  (*Id.* at 3).  State Farm sent Stasek a letter the same day estimating her claim at $1,217.53.  (*Id.* at 17).  When Stasek disputed this assessment, State Farm reinspected the property on June 29, 2022, with a representative from Stasek's attorney's office present.  (*Id.* at 3).  The findings from this inspection "were consistent with the initial inspection."  (*Id.*).  On that basis, State Farm sent Stasek a second letter denying additional coverage on July 13, 2022.  (*Id.* at 43–44).  At that point, the only evidence contradicting State Farm's position were photos from Stasek's estimator showing roof damage but without an estimate or any opinion on causation.  (*Id.* at 3, 6).

Stasek does not dispute that these inspections happened or that the inspectors reached these conclusions—though she disputes that the conclusions are accurate.  (Dkt. No. 25 at 4–6).  Even so, the results of State Farm's two inspections, "*if believed*, would justify denial of the claim."  *Higginbotham*, 103 F.3d at 459 (emphasis added).  State Farm has therefore met its initial burden of introducing undisputed record evidence showing a reasonable basis for denying the claim.  *See Switzer v. State Farm Lloyds*, 642 F.Supp.3d 568, 573–75 (W.D. Tex. 2022) (describing the insurer's initial burden and finding that it was satisfied by prompt inspections supporting the insurer's coverage position).

The burden shifts to Stasek to present evidence showing a genuine dispute about whether State Farm lacked a reasonable basis for its decision or conducted an

unreasonable, outcome-driven investigation. *See id.* at 573, 575. Stasek's evidence centers on her expert's competing conclusions about causation. (*See* Dkt. No. 25 at 11–13). Yet Stasek's expert prepared his report on August 22, 2023. (Dkt. 25-7 at 2). That is almost two years after State Farm first determined that Stasek's damage was below her deductible, (Dkt. No. 24-2 at 17), and more than a year after it denied additional coverage, (*id.* at 43).

The reasonableness of an insurer's actions "must be judged by the facts before the insurer at the time the claim was denied." *Viles*, 788 S.W.2d at 567. So, Hall's conclusions do not bear on State Farm's extracontractual liability. And in any case, "[a] simple disagreement among experts about whether the cause of loss is covered by the policy will not support a judgment for bad faith." *Moriel*, 879 S.W.2d at 18; *Garcia v. Lloyds*, 514 S.W.3d 257, 277 (Tex. App.—San Antonio 2016, pet. denied), *disapproved of on other grounds by Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806 (Tex. 2019); *see also Thompson v. Zurich Am. Ins. Co.*, 664 F.3d 62, 67 (5th Cir. 2011) (collecting cases) ("Conflicting expert opinions, by themselves, do not establish that the insurer acted unreasonably in relying on its own expert.").

What's more, Stasek's specific allegations of wrongdoing show no more than a bona fide coverage dispute. For example, Stasek claims that "State Farm mispresented that hail/wind damage only amounted to $1,217.53 . . . and that any remaining damage to the property was caused by events that are categorized as policy exclusions." (Dkt. No. 25 at 15). "These *misrepresentations*," Stasek continues, "were the producing cause of actual damages to Plaintiff." (*Id.*) (emphasis in original). But what Stasek emphatically

characterizes as "misrepresentations" are simply State Farm's conclusions, supported by its two inspections, that the roof damage resulted from excluded causes.

Elsewhere, Stasek contends that State Farm "made certain representations regarding the policy it offered to Plaintiff, stating that it would cover hail and windstorm damage," which proved to be false.  (*Id.* at 19–20).  Again, this allegation just reprises the underlying coverage dispute.  If, as State Farm contends, most of Stasek's damage was not the result of hail or a windstorm, then State Farm did not misrepresent the policy's benefits.

Finally, Stasek claims that State Farm acted in bad faith by citing "numerous exclusions under the policy" in its denial letter without providing "any details whatsoever as to which portions of the damage to the property its adjuster found corresponded with the excluded conditions cited."  (*Id.* at 21).  But Stasek cites no authority suggesting that an insurer acts in bad faith by listing policy exclusions without matching each exclusion to specific property conditions.   Further, courts have consistently held that an insurer does not act in bad faith by citing policy exclusions that later prove incorrect.  *See, e.g.*, *Tex. Friends Chabad-Lubavitch, Inc.*, 539 F.Supp.3d at 682 ("An insurer's basis for denying or delaying payment can be 'reasonable' even if it eventually turns out to be erroneous." (citing *Thompson*, 664 F.3d at 66)); *Royal Surplus Lines Ins. Co.  v. Brownsville Indep. Sch. Dist.*, 404 F.Supp.2d 942, 950 (S.D. Tex. 2005) ("[A] bonafide [sic] controversy or reasonable basis is sufficient reason for an insurer to delay or fail to make a prompt payment . . . even if the insurer's reason eventually is proven to be erroneous." (citing *Higginbotham*, 103 F.3d at 459)).

In short, the record evidence shows nothing more than "a bona fide coverage dispute," which "does not demonstrate bad faith." *See Simmons*, 963 S.W.2d at 44. Although issues of reasonability are normally left for a factfinder to determine, "courts routinely determine as a matter of law that undisputed record evidence establishes an insurer had a reasonable basis for denying . . . claim payment." *Alvarez v. State Farm Lloyds*, No. 5:18-CV-01191, 2020 WL 1033657, at *4 (W.D. Tex. Mar. 2, 2020) (collecting cases); *see, e.g.*, *Switzer*, 642 F.Supp.3d at 576 (granting summary judgment where evidence showed that insurer had a reasonable basis for denying or delaying payment for the insured's hail-damage claim due to disputed and contradicting expert reports and cost estimates); *Peterson v. State Farm Lloyds*, 242 F.Supp.3d 557, 562 (W.D. Tex. 2017) (granting summary judgment for the insurer where there was no evidence that the insurer acted in bad faith when denying the insured's claim). Indeed, in *Jesus Church of Victoria Texas, Inc. v. Church Mutual Insurance Co.*, this Court granted summary judgment for an insurer because the insurer had a "reasonable basis" for its actions and the insured's "arguments and evidence establish[ed] only a bona fide coverage dispute." 6:19-CV-00093, 2022 WL 4238089, at *10 (S.D. Tex. Sept. 13, 2022).

So too here. Because Stasek has not raised a genuine issue of material fact regarding whether State Farm lacked any reasonable basis for its coverage decision, the Court grants summary judgment to State Farm on Stasek's claim for breach of the common-law duty of good faith and fair dealing.

14

2. **Texas Insurance Code violations**

Next are Stasek's claims under the Texas Insurance Code. Stasek alleges violations of Sections 541.060(a)(1), (a)(2)(A), (a)(3), (a)(4), (a)(7); 542.058; and 542.060. (Dkt. No. 1 at 5–8). As this Court explained in *Jesus Church of Victoria*, Stasek's claims under Sections 541.060(a)(1), (a)(2)(A), and (a)(7) require the same showing as her good-faith-and-fair dealing claim: that State Farm lacked a reasonable basis for its coverage decision. 2022 WL 4238089, at *10–11. As a result, these claims fail for the reasons just discussed. *See supra* Section III(B)(1). This leaves only Stasek's claims under Sections 541.060(a)(3) and (a)(4), along with her Chapter 542 claims.

a. Chapter 541

Sections 541.060(a)(3) and (a)(4) of the Texas Insurance Code focus on the adequacy and timeliness of communications, not the reasonableness of coverage decisions. *See Jesus Church of Victoria*, 2022 WL 4238089, at *11. Under Section 541.060(a)(3), an insurer is liable for "failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy . . . for the insurer's denial of a claim." Tex. Ins. Code § 541.060(a)(3). Section 541.060(a)(4), meanwhile, imposes liability for "failing within a reasonable time to . . . affirm or deny coverage of a claim to a policy holder." *Id.* § 541.060(a)(4). Stasek does not raise a fact issue on either provision.

i. Section 541.060(a)(3)

Starting with Section 541.060(a)(3)'s requirement that insurers provide reasonable explanations for claim denials, the record shows that State Farm sent detailed letters explaining its decisions. (Dkt. No. 24-2 at 17–19, 43–44). State Farm's October 4, 2021,

15

letter explained that while some hail damage was found, the total hail-related repairs fell below Stasek's deductible. (*Id.* at 17). The letter also outlined policy exclusions for wear and tear, along with other exclusions that could apply. (*Id.* at 18). Similarly, State Farm's July 13, 2022, letter following its reinspection explained its continued denial, detailing the specific property conditions observed and citing an even more limited list of exclusions. (*Id.* at 43–44).

Stasek responds that "State Farm did not detail or specifically explain what portions of the Property were affected by the alleged conditions [that] gave rise to any of the exclusions cited in those letters." (Dkt. No. 25 at 19). In *Thompson v. State Farm Lloyds*, another court in this district addressed this exact argument in the context of an identical denial letter and held that the argument "stretche[d] the bounds of credibility." No. 4:23-CV-02322, 2024 WL 4544783, at *6 (S.D. Tex. Oct. 22, 2024). The *Thompson* Court explained that Section 541.060(a)(3) "does not obligate an insurer to provide an insured every piece of information or every written document the insurer has regarding the offer or the investigation." *Id.* (quoting *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 795 F.Supp.2d 493, 534 (N.D. Tex. 2011), *aff'd*, 709 F.3d 515 (5th Cir. 2013)). "Rather, the statute requires the insurer to provide a *reasonable explanation* of the factual or legal basis in the policy, in relation to the facts or applicable law." *Id.* (emphasis in original) (quoting *Mid-Continent Cas. Co.*, 795 F.Supp.2d at 534). Applying these principles, the *Thompson* Court held that an identical denial letter in a similar factual setting satisfied Section 541.060(a)(3)'s requirements. *See id.*

The Court agrees that State Farm's denial letters satisfy Section 541.060(a)(3). The initial letter (1) explains that most of the damage is inconsistent with Stasek's alleged cause of loss and (2) cites a limited list of policy exclusions, most of which are at least consistent with the varied types of damage identified. (Dkt. No. 24-2 at 18). And when Stasek challenged these conclusions, State Farm reinspected the property and sent Stasek a second letter explaining its denial of additional coverage. (*Id.* at 43–44). The letter identified "wear, tear, [and] deterioration" as the excluded causes and offered a narrower list of exclusions. (*Id.*).

"[N]o authority indicates that the insurer's explanation must exhaustively cover every possible detail or aspect of the claim." *Nieto v. State Farm*, 722 F.Supp.3d 653, 659 (S.D. Tex. 2024) (granting summary judgment on the plaintiff's Section 541.060(a)(3) claim where State Farm's denial letter "explained its conclusion that wear and tear, rather than a storm caused the roof damage, and that, as a result, the Policy did not cover the damage"); *see also Mid-Continent Cas. Co.*, 795 F.Supp.2d at 529–35 (providing a thorough review of Section 541.060(a)(3)'s requirements and overturning a jury finding of Section 541.060(a)(3) liability under this provision where the insurer cited the basic facts supporting denial).[3]

---

[3] In its Motion, State Farm cites testimony purportedly from Stasek's deposition where she allegedly stated that she was not confused by State Farm's initial denial letter. (*See* Dkt. No. 24 at 17) (citing Dkt. No. 24-4). The Court agrees that this testimony would be probative of whether State Farm's explanation was sufficient if the testimony were in the record. But the testimony State Farm quotes in its Motion is not found in the cited exhibit. (*See* Dkt. No. 24-4).

In short, while Stasek disagrees with State Farm's conclusions, she offers no evidence that State Farm's explanations were unclear or unreasonable. And courts in this district have granted summary judgment for insurers on Section 541.060(a)(3) claims under similar or nearly identical facts. *See, e.g.*, *Thompson*, 2024 WL 4544783, at *6; *Nieto*, 722 F.Supp.3d at 659; *Salinas v. State Farm Fire & Cas. Co.*, No. 1:10-CV-00194, 2012 WL 13055350, at *7 (S.D. Tex. Feb. 6, 2012). For these reasons, the Court grants summary judgment to State Farm on Stasek's Section 541.060(a)(3) claim.

ii.     Section 541.060(a)(4)

Next, Section 541.060(a)(4) requires insurers to "affirm or deny coverage" "within a reasonable time." Tex. Ins. Code § 541.060(a)(4). The record shows that State Farm promptly affirmed or denied coverage. State Farm inspected the property and issued its initial coverage determination within two weeks of receiving Stasek's claim. (Dkt. No. 24-2 at 2–3). When Stasek disputed this determination, State Farm promptly responded to requests for reinspection. (*Id.* at 3, 6). After conducting a second inspection on June 29, 2022, State Farm promptly communicated its findings in a July 13, 2022, letter. (*Id.* at 43–44).

Courts have found similar or even longer response times reasonable as a matter of law. *See Lee v. Catlin Specialty Ins. Co.*, 766 F.Supp.2d 812, 825 (S.D. Tex. 2011) (finding that a six-month delay between claim notification and completion of the investigation was reasonable); *Thompson*, 2024 WL 4544783, at *6 (eight-day response time was "eminently reasonable"); *Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, No. 4:09-CV-0422, 2016 WL 5539895, at *41 (S.D. Tex. Sept. 29, 2016) (11-day response time was reasonable

as a matter of law), *rev'd in part on other grounds*, 917 F.3d 352 (5th Cir. 2019); *Torres v. Lloyd's of London Syndicate No. 4242*, No. 1:10-CV-00200, 2011 WL 6257144, at *10 (S.D. Tex. Dec. 14, 2011) (denying claim within 39 days was reasonable as a matter of law).

Stasek does not respond to this issue beyond a conclusory and unexplained allegation that "State Farm failed to affirm or deny coverage within a reasonable amount of time." (Dkt. No. 25 at 16).  In short, Stasek has failed to show a genuine fact issue on the timeliness of State Farm's coverage determinations.  The Court grants summary judgment to State Farm on Stasek's Section 541.060(a)(4) claims.

b.    Chapter 542

Stasek also asserts claims under Chapter 542 of the Texas Insurance Code, known as the Texas Prompt Payment of Claims Act ("TPPCA").  Under the TPPCA, an insurer must pay statutory interest and attorney's fees if it delays payment of a claim for which it is liable beyond the applicable statutory period.  Tex. Ins. Code § 542.058.

Chapter 542 mandates "statutory damages for failure to pay an insurance claim within a specified time if an insurer is found liable under a policy, even if the insurer had a reasonable basis for denying coverage." *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 861 (5th Cir. 2003) (per curiam) (interpreting a prior version of the statute, now recodified without modification as Chapter 542).  "To prevail on a TPPCA claim for damages and interest, an insured must demonstrate the insurer's (1) liability under the policy, and (2) failure to comply with the TPPCA." *Advanced Indicator & Mfg., Inc. v. Acadia Ins. Co.*, 50 F.4th 469, 477 (5th Cir. 2022) (per curiam).  In other words, the

19

insured must show only "that the requisite time has passed and the insurer was ultimately found liable for the claim." *Performance Autoplex II Ltd.*, 322 F.3d at 861.

"A wrongful rejection of a claim, if reduced to judgment, can be considered a delay in payment under the TPPCA." *Advanced Indicator & Mfg., Inc.*, 50 F.4th at 477 (first citing *Higginbotham*, 103 F.3d at 461; and then citing *Barbara Techs. Corp.*, 589 S.W.3d at 819–20). "Accordingly, should [Stasek] succeed on [her] breach claim, [she] may succeed on [her] TPPCA claim as well." *Id.* at 477–78. Because fact issues remain on Stasek's breach-of-contract claim, State Farm is not entitled to summary judgment on Stasek's Chapter 542 claim. *See id.* The Court therefore denies summary judgment to State Farm on Stasek's claims under Sections 542.058 and 542.060.

### 3.    DTPA claims

Finally, the Court addresses Stasek's DTPA claims. (Dkt. No. 1 at 9–10). The DTPA provides Texas consumers a cause of action for deceptive business practices, including violations of Chapter 541 of the Texas Insurance Code.[4] *See* Tex. Bus. & Com. Code §§ 17.46(b), .50(a)(4).

Stasek's DTPA claims fall into two categories. First, Stasek brings DTPA claims based on alleged violations of Chapter 541 of the Texas Insurance Code. Second, Stasek

---

[4]    Stasek contends that the DTPA's laundry list of actions "identifies violations of Chapters 541 *or 542* of the Texas Insurance Code." (Dkt. No. 25 at 19) (emphasis added) (citing Tex. Bus. & Com. Code § 17.46). Not so. Section 17.46(b)—the DTPA's so-called laundry list—says nothing about Chapter 541 or 542 violations. Tex. Bus. & Com. Code § 17.46(b). Section 17.50(a)(4), meanwhile, provides a cause of action based on "the use or employment by any person of an act or practice in violation of *Chapter 541, Insurance Code.*" *Id.* § 17.50(a)(4) (emphasis added). The DTPA nowhere provides liability for violations of Chapter 542.

alleges independent DTPA violations based on State Farm's claims-handling services and purported misrepresentations about the policy's benefits.

As just discussed, Stasek cannot establish violations of Chapter 541's unfair-settlement provisions. *See supra* Section III(B)(2). Because Stasek's Insurance Code-based DTPA claims depend on proving those underlying violations, these claims necessarily fail as well. *See Jesus Church of Victoria*, 2022 WL 4238089, at *10–11.

Stasek's standalone DTPA claims—if any are sufficiently alleged—fare no better. State Farm argues that "Plaintiff has copy-and-pasted a laundry list of DTPA violations yet provided no evidence of the alleged violations." (Dkt. No. 24 at 17). In response, the only attempt Stasek makes to connect State Farm's actions to a specific laundry-list provision is to argue that State Farm "made certain representations regarding the policy it offered to Plaintiff in that it would cover hail and windstorm damage" and that, in doing so, State Farm "[r]epresented that goods or services had sponsorship, approval, characteristics, uses, benefits, or quantities they did not have." (Dkt. No. 25 at 19–20) (misquoting Tex. Bus. & Com. Code § 17.46(b)(5)).[5]

As explained above, this claim simply reprises the underlying coverage dispute. *See supra* Section III(B)(1). State Farm did not misrepresent the policy's coverage; the policy does cover hail damage—as shown by State Farm's coverage of the below-deductible hail damage its inspector found. (Dkt. No. 24-2 at 3). State Farm denied

---

[5]    Section 17.46(b)(5) states, in relevant part, that "the term 'false, misleading, or deceptive acts or practices' includes . . . representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." Tex. Bus. & Com. Code § 17.46(b)(5).

coverage for the rest of the damage because it believed, not that the policy does not cover hail damage, but that the damage *was not caused by hail*.  (*Id.* at 17, 43–44).

Fact issues remain about whether State Farm's conduct was a breach of contract, *see supra* Section III(A), but without more, it does not violate the DTPA.  "The Texas Supreme Court has made clear that '[a]n allegation of a mere breach of contract, without more, does not constitute a "false, misleading or deceptive act" in violation of the DTPA.'"  *Hernandez v. Ikon Off. Sols., Inc.*, 306 F.App'x 180, 182 (5th Cir. 2009) (per curiam) (alteration in original) (quoting *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 304 (Tex. 2006)).  Stasek has no evidence of anything "more" than a breach-of-contract dispute.

In response to State Farm's no-evidence challenge, Stasek has not shown a genuine fact issue on either her Insurance Code-based or standalone DTPA claims.  For that reason, the Court **GRANTS** summary judgment to State Farm on all of Stasek's DTPA causes of action.

## IV.    CONCLUSION

For the reasons above, the Court **GRANTS in part** and **DENIES in part** State Farm Lloyd's Motion for Summary Judgment.  (Dkt. No. 24).  Summary judgment is **GRANTED** on Stasek's good-faith-and-fair-dealing, Chapter 541, and DTPA claims.  Summary judgment is **DENIED** on her breach-of-contract and Chapter 542 claims.

IT IS SO ORDERED.

Signed on March 28, 2025.

DREW B. TIPTON
UNITED STATES DISTRICT JUDGE